**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DELI CHEN and HUIJUAN CHEN,<br><br>Petitioner,<br><br>v.<br><br>CHRISTOPHER CHESTNUT, et al.,<br><br>Respondents. | Case No. 1:25-cv-01338-EPG-HC<br><br>ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS AND DIRECTING RESPONDENTS TO IMMEDIATELY RELEASE PETITIONERS |

Petitioners, represented by counsel, are federal immigration detainees proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. The parties have consented to the jurisdiction of a United States magistrate judge. (ECF Nos. 8, 10, 11.) For the reasons set forth herein, the petition for writ of habeas corpus is granted on Count I and Respondents are ordered to immediately release Petitioners.

**I.**

**BACKGROUND**

Petitioner Deli Chen ("Mr. Chen") is married to Petitioner Huijuan Chen ("Ms. Chen") (collectively, "Petitioners"). Petitioners are both natives and citizens of the People's Republic of China. (ECF No. 1 at 3.[1]) The petition alleges that Mr. and Ms. Chen entered the United States on or about June 18, 1993. (Id. at 4.) However, Respondents have submitted declarations of a

---

[1] Page numbers refer to ECF page numbers stamped at the top of the page.

1

1  deportation officer stating that Ms. Chen entered the United States near Boston on or about July
2  22, 1992, and Mr. Chen entered the United States near New York City on or about July 18, 1993.
3  (ECF No. 12-2 at 1; ECF No. 12-1 at 1.)

4      On or around April 15, 1997, Mr. Chen was placed in removal proceedings with the filing
5  of a Notice to Appear ("NTA"), charging him with removability under 8 U.S.C.
6  § 1182(a)(6)(A)(i) as a noncitizen present without admission or parole. (ECF No. 12-1 at 2.) On
7  or around August 11, 1998, Ms. Chen was placed in removal proceedings with the filing of a
8  NTA, charging her with removability under 8 U.S.C. § 1182(a)(6)(A)(i) as a noncitizen present
9  without admission or parole. (ECF No. 12-2 at 2.) An immigration judge ("IJ") consolidated the
10 removal proceedings of Petitioners. (ECF No. 12-1 at 2; ECF No. 12-2 at 2.) Petitioners filed
11 applications for political asylum. (ECF No. 1 at 4.) On July 9, 1999, an IJ denied Petitioners'
12 applications for relief from removal and ordered both Petitioners removed to the People's
13 Republic of China. (Id.; ECF No. 12-1 at 2; ECF No. 12-2 at 2.) On September 4, 2002, the
14 Board of Immigration Appeals ("BIA") dismissed Petitioners' appeal. (Id.)

15     On or about November 26, 2002, Petitioners filed a motion to reopen with the BIA,
16 which denied the motion on February 9, 2005. Petitioners filed a motion to reconsider the BIA's
17 denial, and on June 30, 2005, the BIA denied reconsideration. (ECF No. 12-1 at 2; ECF No. 12-2
18 at 2.) On or about November 9, 2006, Petitioners filed a second motion to reopen with the BIA,
19 which denied the motion on or about April 23, 2008. In 2009, the United States Court of Appeals
20 for the Second Circuit denied Petitioners' petition for review. (Id.)

21     On February 10, 2010, Mr. Chen was placed in Immigration and Customs Enforcement
22 ("ICE") custody under 8 U.S.C. § 1231(a), as a noncitizen with a final order of removal. (ECF
23 No. 12-1 at 2.) On or about August 3, 2010, Mr. Chen was turned over to a federal agency for
24 prosecution for trafficking in counterfeit goods, in violation of 18 U.S.C. § 2320(a). (ECF No.
25 12-1 at 2.) On or about June 8, 2011, Mr. Chen was convicted in the United States District Court
26 for the Northern District of California and was sentenced to time served. That same day, Mr.
27 Chen was transferred to ICE for processing. Mr. Chen was enrolled in the Intensive Supervision
28 Appearance Program ("ISAP"). (Id.)

1     On or about August 2, 2010, Ms. Chen was arrested for trafficking in counterfeit goods, in violation of 18 U.S.C. § 2320(a). (ECF No. 12-2 at 2.) On August 11, 2011, Ms. Chen was sentenced to fifteen months imprisonment and three years of supervised release. On or about September 8, 2011, Ms. Chen was turned over to ICE custody. That same day, she was released from ICE custody and placed on Alternatives to Detention ("ATD"). On September 21, 2011, Ms. Chen was enrolled in ISAP. (Id.)

    On or around October 12, 2011, Petitioners filed a petition for review and motion for stay of removal with the United States Court of Appeals for the Ninth Circuit. The Ninth Circuit transferred the petition to the Second Circuit, which dismissed the petition for review and denied the motion for stay on June 21, 2012. (ECF No. 12-1 at 3; ECF No. 12-2 at 3.)

    On or about March 15, 2013, Mr. Chen was arrested for felony vandalism. After his release from criminal custody, Mr. Chen was placed back on GPS monitoring. (ECF No. 12-1 at 3.) From 2014 to June 2017, Petitioners reported to the Office of Enforcement and Removal Operations ("ERO") under Orders of Supervision ("OSUP") several times a year. (Id.; ECF No. 12-2 at 3.)

    On or about December 5, 2017, Mr. Chen submitted an application for a stay of deportation or removal, which was denied by ERO on January 8, 2018. Mr. Chen was placed into ICE custody pursuant to 8 U.S.C. § 1231(a). On June 19, 2018, the BIA denied Mr. Chen's third motion to reopen and denied his request for a stay of removal. On or about July 18, 2018, Mr. Chen was released from custody and placed on OSUP. (ECF No. 12-1 at 4.)

    On or about January 3, 2018, Ms. Chen submitted an application for a stay of deportation or removal, which was denied by ERO approximately two weeks later. (ECF No. 12-2 at 3.) On October 11, 2019, Ms. Chen filed a third motion to reopen with the BIA, which denied the motion on May 21, 2020. (Id. at 4.)

    From 2018 to 2025, Petitioners reported with ERO on multiple occasions. (ECF No. 12-1 at 4; ECF No. 12-2 at 4.) On September 3, 2025, after an interview with a deportation officer, Petitioners were taken into ICE custody. (Id.)

///

1   On October 7, 2025, Petitioners filed the instant petition for writ of habeas corpus. (ECF
2   No. 1.) Respondents have filed a response, and Petitioners have filed a reply. (ECF Nos. 12, 13.)

## II.

## DISCUSSION

In the petition, Petitioners raise the following claims for relief: (1) violation of procedural due process and the Accardi doctrine and failure to comply with 8 C.F.R. §§ 241.4 and 41.13(i); (2) violation of 8 U.S.C. § 1231's statutory detention limits; (3) violation of the Fifth Amendment's Due Process Clause and the Zadvydas standard; and (4) violation of the Fifth Amendment due to absence of any legitimate government interest in detention. (ECF No. 1 at 7–11.)

### A. Failure To Comply With 8 C.F.R. § 241.4 and § 241.13(i)

In Count I, Petitioners assert that Respondents failed to comply with 8 C.F.R. §§ 241.4(l) and 241.13(i), which renders their detention unlawful. (ECF No. 1 at 8–9.) Specifically, Petitioners contend that: they were "taken into custody on September 3, 2025, by ICE officers without a revocation decision by the Executive Associate Commissioner or District Director, thereby exceeding the authority granted by § 241.4(*l*)(2)"; they "were never provided with written notice of the reasons for revocation, as required by § 241.4(*l*)(1)"; "ICE did not conduct the required prompt informal interview after the petitioners were returned to custody"; they "were denied any chance to submit evidence that removal to China is impossible, and ICE produced no record-based finding that a 'significant likelihood of removal' exists"; and "8 C.F.R. § 241.4(*l*) obligates the revoking official to prepare a written determination" but "none was ever produced." (ECF No. 1 at 8.)

"Specific regulations, 8 C.F.R. §§ 241.13(i) and 241.4(l), govern how and when ICE may revoke the release of a noncitizen who has been ordered removed." Yan-Ling X. v. Lyons, No. 1:25-cv-01412-KES-CDB (HC), 2025 WL 3123793, at *3 (E.D. Cal. Nov. 7, 2025). 8 C.F.R. § 241.13(i) provides in pertinent part:

> (1) Violation of conditions of release. Any alien who has been released under an order of supervision under this section who violates any of the conditions of release may be returned to

>custody and is subject to the penalties described in section 243(b) of the Act. In suitable cases, the HQPDU shall refer the case to the appropriate U.S. Attorney for criminal prosecution. The alien may be continued in detention for an additional six months in order to effect the alien's removal, if possible, and to effect the conditions under which the alien had been released.
>
>(2) Revocation for removal. The Service may revoke an alien's release under this section and return the alien to custody if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future. Thereafter, if the alien is not released from custody following the informal interview provided for in paragraph (h)(3) of this section, the provisions of § 241.4 shall govern the alien's continued detention pending removal.
>
>(3) Revocation procedures. Upon revocation, the alien will be notified of the reasons for revocation of his or her release. The Service will conduct an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification. The alien may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision. The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release.

8 C.F.R. § 241.13(i)(1)–(3).

8 C.F.R. § 241.4(b)(4) provides:

>Service determination under 8 CFR 241.13. The custody review procedures in this section do not apply after the Service has made a determination, pursuant to the procedures provided in 8 CFR 241.13, that there is no significant likelihood that an alien under a final order of removal can be removed in the reasonably foreseeable future. However, if the Service subsequently determines, because of a change of circumstances, that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future to the country to which the alien was ordered removed or to a third country, the alien shall again be subject to the custody review procedures under this section.

8 C.F.R. § 241.4(b)(4). With regard to revocation, 8 C.F.R. § 241.4(l) provides in pertinent part:

>(1) Violation of conditions of release. Any alien described in paragraph (a) or (b)(1) of this section who has been released under an order of supervision or other conditions of release who violates the conditions of release may be returned to custody. Any such alien who violates the conditions of an order of supervision is subject to the penalties described in section 243(b) of the Act. Upon revocation, the alien will be notified of the reasons for

5

> revocation of his or her release or parole. The alien will be afforded an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification.
>
> (2) Determination by the Service. The Executive Associate Commissioner shall have authority, in the exercise of discretion, to revoke release and return to Service custody an alien previously approved for release under the procedures in this section. A district director may also revoke release of an alien when, in the district director's opinion, revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner. Release may be revoked in the exercise of discretion when, in the opinion of the revoking official:
>
>> (i) The purposes of release have been served;
>> (ii) The alien violates any condition of release;
>> (iii) It is appropriate to enforce a removal order or to commence removal proceedings against an alien; or
>> (iv) The conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate.

8 C.F.R. § 241.4(l)(1)–(2).

Respondents' Return to Petition for Writ of Habeas Corpus (ECF No. 12) does not respond to Claim I of Petitioners' petition or otherwise argue that the government complied with the applicable regulations.

Respondents have submitted two declarations from a deportation officer regarding each of the petitioners. Those declarations provide the following paragraph regarding the circumstances of Petitioners' re-detention, which is nearly identical regarding each petitioner:

> On September 03, 2025, after an interview with a deportation officer, Petitioner was taken into ICE custody. On this date, Petitioner was served with a Notice of Revocation of Release, a Warrant of Removal/Deportation, Form I-205, and Warning to Alien Ordered Removed or Deported, Form I-294. Petitioner was informed about the reasons for revocation or release, ICE's determination that he can be expeditiously removed from the United States, and his ability to submit any evidence or information he wishes ERO to review in support of his release.

(ECF No. 12-1 at 4; ECF No. 12-2 at 4.) The declarations do not include the documents provided to Petitioners nor do they state what reasons were given to Petitioners for revocation of their release.

The Court finds the government failed to follow the applicable regulations regarding Petitioners' re-detention. Hoac v. Becerra, No. 2:25-cv-01740-DC-JDP, 2025 WL 1993771, at

6

1  *4 (E.D. Cal. July 16, 2025) ("Government agencies are required to follow their own

2  regulations.") (citing United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 268 (1954)).

3  Accord Rombot v. Souza, 296 F. Supp. 3d 383, 388 (D. Mass. 2017) ("ICE, like any agency,

4  'has the duty to follow its own federal regulations.'" (quoting Haoud v. Ashcroft, 350 F.3d 201,

5  205 (1st Cir. 2003))).

6       1.  Changed Circumstances

7       Nowhere in Respondents' response or the submitted declarations do Respondents

8  explicitly state the reasons for Petitioners' re-detention, that there was a regulatory basis for

9  revocation of release, or that Respondents otherwise complied with the applicable regulations.

10  Instead, Respondents argue that "[p]resuming that Petitioners' post-removal-period detention has

11  exceeded the presumptively reasonable six-month period due to prior periods of ICE detention,

12  they have failed to sustain their burden of showing there is no significant likelihood of removal

13  in the reasonably foreseeable future," citing to Zadvydas v. Davis, 533 U.S. 678, 701 (2001).

14  (ECF No. 12 at 7.)

15       "However, the burden-shifting framework from *Zadvydas* does not apply" to Count I,

16  which concerns Respondents' failure to comply with 8 C.F.R. §§ 241.4(l) and 241.13(i) and

17  "ICE's authority to *re-detain* [Petitioners] after [they] w[ere] issued a final order of removal,

18  detained, and subsequently released on" orders of supervision. Yan-Ling X., 2025 WL 3123793,

19  at *3 (alterations added) (quoting Nguyen v. Hyde, 788 F. Supp. 3d 144, 149 (D. Mass. 2025)).

20  "[T]his is not your typical first round detainment of an alien awaiting removal. . . . *Zadvydas*,

21  relied upon by Respondents, dealt with the initial detainment of an alien awaiting removal."

22  Escalante v. Noem, No. 9:25-CV-00182-MJT, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2,

23  2025). Thus, the "regulations at 8 C.F.R. §§ 241.13(i) and 241.4(l) apply to non-citizens in

24  [Petitioners'] situation and outline the process to be followed," including that "when ICE revokes

25  release to effectuate removal, 'it is [ICE's] burden to show a significant likelihood that the alien

26  may be removed.'" Yan-Ling X., 2025 WL 3123793, at *3, 4 (second alteration in original)

27  (quoting Escalante, 2025 WL 2206113, at *3) (citing Roble v. Bondi, No. 25-CV-3196

28  (LMP/LIB), 2025 WL 2443453, at *4 (D. Minn. Aug. 25, 2025) ("[T]he regulations at issue in

1   this case place the burden on ICE to first establish changed circumstances that make removal
2   significantly likely in the reasonably foreseeable future."); Abuelhawa v. Noem, No. 4:25-CV-
3   04128, 2025 WL 2937692, at *8 (S.D. Tex. Oct. 16, 2025) ("[U]pon revocation of release, the
4   Government bears the burden to show a significant likelihood that the alien may be removed in
5   the reasonably foreseeable future."); Nguyen, 788 F. Supp. 3d at 150).

6   The only evidence provided by Respondents that touches upon this issue are the
7   declarations of the deportation officer, which state: "ERO is actively working on obtaining . . .
8   travel document[s] for Petitioner[s] and has initiated the process to expeditiously remove [them]
9   from the United States[.]" (ECF No. 12-1 at 5; ECF No. 12-2 at 4.) On September 24 and 26,
10  2025, Petitioners were served with travel document applications. (Id.)

11  "The fact that Respondents [apparently] intend to complete a travel document request for
12  Petitioner does not make it significantly likely he will be removed in the foreseeable future."
13  Hoac, 2025 WL 1993771, at *4 (alteration added). "Respondents fail to explain why China did
14  not issue a travel document in the past or why China is likely to issue a travel document for
15  [Petitioners] in the reasonably foreseeable future." Yan-Ling X., 2025 WL 3123793, at *4
16  (alteration added). "Respondents' [implied] intent to eventually complete . . . travel document
17  request[s] for Petitioner[s] does not constitute a changed circumstance" that makes removal
18  significantly likely in the reasonably foreseeable future. Hoac, 2025 WL 1993771, at *4
19  (alterations added) (citing Liu v. Carter, No. 25-cv-03036-JWL, 2025 WL 1696526, at *2 (D.
20  Kan. Jun. 17, 2025)). See Vu, 2025 WL 3114341, at *6 (finding "general assertion that ICE is
21  'mak[ing] efforts' to obtain travel documents for petitioner . . . not compelling" because
22  "Respondents do not identify any specific efforts they have made to obtain a travel document
23  from Vietnam for petitioner, much less whether they have any indication from Vietnam that it is
24  likely to issue such a travel document").[2]

---

[2] Respondents contend that "Petitioners have been slow-playing the process of obtaining Chinese passports for over a decade." (ECF No. 12 at 7.) Petitioners assert that "ICE's own supervision records confirm consistent cooperation by Petitioners for more than a decade, including: Regular check-ins since 2011; attendance at consular appointments scheduled by ICE or Petitioners; submission of identity documents as requested; and multiple good-faith applications for Chinese passports." (ECF No. 13 at 4.) Petitioners argue that "[t]he Chinese consulate's continued failure to issue travel documents reflects a

Accordingly, Respondents have failed to satisfy their burden that changed circumstances have made Petitioners' removal to China significantly likely in the reasonably foreseeable future as required by 8 C.F.R. § 241.13(i).

2. <u>Notice and Informal Interview</u>

The evidence before the Court indicates that Respondents also have not complied with the required procedures for re-detention. As set forth above, even if "on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future," the government must follow the revocation procedures set forth in 8 C.F.R. § 241.13(i)(3):

> (3) Revocation procedures. Upon revocation, the alien will be notified of the reasons for revocation of his or her release. The Service will conduct an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification. The alien may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision. The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release.

Further, 8 C.F.R. § 241.4(l)(1) provides in pertinent part:

> (1) Violation of conditions of release. Any alien described in paragraph (a) or (b)(1) of this section who has been released under an order of supervision or other conditions of release who violates the conditions of release may be returned to custody. Any such alien who violates the conditions of an order of supervision is subject to the penalties described in section 243(b) of the Act. Upon revocation, the alien will be notified of the reasons for revocation of his or her release or parole. The alien will be afforded an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification.[3]

---

diplomatic or political impasse, not any refusal or lack of cooperation on the part of Petitioners." (ECF No. 13 at 4.) Regardless of whether the failure to obtain travel documents from China was due to Petitioners' alleged "slow-playing the process of obtaining Chinese passports" or "a diplomatic or political impasse" out of Petitioners' control, Respondents general assertions that "ERO is actively working on obtaining . . . travel document[s]" does not constitute a changed circumstance.

[3] Although "DHS has asserted in other litigation that the notice [and interview] requirements set forth in 8 C.F.R. § 241.4(l)(1) do not constrain revocation of release pursuant to § 241.4(l)(2), several district courts have rejected that argument." <u>Khamba v. Albarran</u>, No. 1:25-CV-01227 JLT SKO, 2025 WL 2959276, at *8 n.13 (E.D. Cal. Oct. 17, 2025) (collecting cases and "agree[ing] with those decisions that the notice

Here, there is a dispute regarding whether Petitioners were notified of the reasons for revocation of their release. The petition alleges that on September 3, 2025, "ICE arrested both petitioners without warning as they reported their scheduled supervision appointment" and that "[o]n September 19, 2025, counsel emailed the Office of Enforcement and Removal Operations ("ERO") at ero.INFO@ice.dhs.gov, requesting an explanation for the continued detention and a projected release date. No response has been received." (ECF No. 1 at 7). Respondents do not address this allegation in their response to the petition, although the declarations of the deportation officer state that "Petitioner was informed about the reasons for revocation or release." (ECF No. 12-1 4; ECF No. 12-2 at 4.) Yet, Respondents do not explain what those reasons were or submit any documents or other evidence in support of this statement.

Petitioners also claim that "ICE did not conduct the required prompt informal interview after the petitioners were returned to custody."[4] (ECF No. 1 at 7, 8.) Respondents do not respond to this allegation. Moreover, although the declarations of the deportation officer state that Petitioners were informed of their "ability to submit any evidence or information she wishes ERO to review in support of her release," they do not represent that Petitioners were provided with an informal interview.

Thus, the evidence before the Court indicates that Respondents failed to follow the process required for re-detention as required by 8 C.F.R. §§ 241.13(i) and 241.4(l). Hoac v. Becerra, No. 2:25-CV-01740-DC-JDP, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025) ("Because there is no indication that an informal interview was provided to Petitioner[s], the court finds . . . [Petitioners'] re-detainment was unlawful."); Yang v. Kaiser, No. 2:25-CV-02205-DAD-AC (HC), 2025 WL 2791778, at *5 (E.D. Cal. Aug. 20, 2025) (finding that "failure to provide an informal hearing is alone sufficient to entitle petitioner to the requested" relief of release from custody).

---

and interview requirements apply to anyone whose supervision has been revoked pursuant to 8 C.F.R. § 241.4(l)(1) or (2)."

[4] "A court 'may treat the allegations of a verified ... petition [for writ of habeas corpus] as an affidavit.'" Vu v. Noem, No. 1:25-cv-01366-KES-SKO (HC), 2025 WL 3114341, at *1 n.3 (E.D. Cal. Nov. 6, 2025) (alteration in original) (quoting L. v. Lamarque, 351 F.3d 919, 924 (9th Cir. 2003)).

3. Conclusion

Accordingly, Petitioners' re-detention was unlawful and their immediate release from custody is warranted.[5] See Nguyen, 788 F. Supp. at 152–53 ("ICE's individualized determination to re-detain Mr. Nguyen is not in compliance with 8 C.F.R. § 241.13(f), (i)(2)" and "[b]ased on ICE's violations of its own regulations, I conclude that Mr. Nguyen's detention is unlawful and that his release is appropriate."); Liu, 2025 WL 1696526, at *3 ("Accordingly, the Court concludes that because officials did not properly revoke petitioner's release pursuant to the applicable regulations, that revocation has no effect, and petitioner is entitled to his release (subject to the same Order of Supervision that governed his most recent release)."); Yan-Ling X., 2025 WL 3123793, at *7 ("Petitioner has shown that she is likely to succeed on her claim that ICE did not have sufficient grounds to re-detain her under the regulations, and that her re-detention was therefore unlawful. Her immediate release is required to return her to the status quo ante.").

**B. Attorney's Fees**

Petitioners have requested costs and attorney's fees in this action pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. (ECF No. 1 at 12.) The EAJA provides in pertinent part:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.
>
> A party seeking an award of fees and other expenses shall, within thirty days of final judgment in the action, submit to the court an application for fees and other expenses which shows that the party is a prevailing party and is eligible to receive an award under this subsection, and the amount sought, including an itemized statement from any attorney or expert witness representing or appearing in behalf of the party stating the actual time expended and the rate at which fees and other expenses were computed. The

---

[5] In light of this conclusion, the Court declines to address Petitioners' remaining claims.

>party shall also allege that the position of the United States was not substantially justified. Whether or not the position of the United States was substantially justified shall be determined on the basis of the record (including the record with respect to the action or failure to act by the agency upon which the civil action is based) which is made in the civil action for which fees and other expenses are sought.

28 U.S.C. § 2412 (d)(1)(A)–(B). The Court will consider an application from Petitioners requesting and substantiating reasonable fees and costs under the EAJA that is filed within thirty days of the judgment.

## III.

## ORDER

Accordingly, the Court HEREBY ORDERS that:

1. The petition for writ of habeas corpus (ECF No. 1) is GRANTED with respect to Count I;

2. Respondents **SHALL IMMEDIATELY RELEASE** Petitioners Deli Chen and Huijuan Chen from custody under the conditions of their most recent orders of supervision;

3. Respondents are **PERMANENTLY ENJOINED AND RESTRAINED** from re-detaining Petitioners unless and until they follow all procedures set forth in 8 C.F.R. §§ 241.4(l), 241.13(i), and any other applicable statutory and regulatory procedures; and

4. Within **THREE (3) days** of the date of service of this order, counsel for Respondents SHALL file a status report to confirm that Petitioners have been released.

IT IS SO ORDERED.

Dated:   **December 5, 2025**                    /s/ Erica P. Grosjean
                                                 UNITED STATES MAGISTRATE JUDGE